J. F. MOOSE et als. v. BOARD OF COMMISSIONERS OF ALEXANDER
COUNTY et als.

(Filed 9 November, 1916.)

**1. Taxation—Constitutional Law—Counties—Special Tax—Poll Tax.**

Article V, section 1, of our Constitution, providing an equation between
the property and poll tax, and requiring that "the State and county capi-
tation tax shall never exceed $2 on the head," is related to and should
be construed with sections 2 and 6 of the same article; and it is *Held*,
that the limitation imposed is for a levy for the ordinary expenses of
the State and county governments, which, under section 2, is to be ap-
plied, so far as it relates to the poll, to the purpose of education and the
support of the poor; and that under section 6 taxes may be "levied by
the commissioners of the several counties for county purposes in like
manner with the State taxes, and shall never exceed the double of the
State tax, except for a special purpose, and with the special approval
of the General Assembly."

**2. Same—Statutes—Equation—Bond Issues.**

The limitation as to the levy on poll tax prescribed by Article V, sec-
tions 1 and 2, of our Constitution does not apply to the levy of a special
tax by a county for road purposes, authorized by the Legislature under
section 6 thereof, submitted to the vote of the electors of the county and
duly approved by them; and where the statute authorizes an issue of
bonds for such purpose upon the property and polls, providing that the
equation between the property and poll tax be observed, and at the time
the taxes of the county have reached the limitation imposed by Article
V, sections 1 and 2, bonds issued in accordance with the provisions of the
statute are not void on the ground that the statute authorizing them is
unconstitutional for that the poll tax in the county would exceed $2, and
the equation prescribed would make it impossible to separate the prop-
erty special tax from the special tax on the poll.

**3. Taxation—Counties—Special Tax—Statutes—Legislative Powers—Consti-
tutional Law.**

The constitutional power conferred on the Legislature to authorize
counties to levy a special tax upon the property and poll for special
county purposes is essential to the existence of the State, and in the exer-
cise of this power the Legislature is supreme. The doctrine of *stare
decisis* discussed.

**4. Taxation—Counties—Special Tax—Polls—Elector—Disqualification.**

Where the Legislature, in the exercise of its power (Art. V, sec. 6)
confers on a county the authority to levy an additional tax in excess of
the poll tax of $2 (secs. 1 and 2), a failure to pay this additional tax on
poll does not disqualify the person failing to pay it to vote; for this
only applies to the failure to pay the poll tax levied directly under the
limitation of Article V, secs. 1 and 2.

**5. Taxation—Counties—Roads—Necessaries.**

A levy of taxes authorized by statute for road purposes of the county
is for a necessary expense.

**6. Taxation—Statutes—Bond Issues—Par—Resales.**

> Where a statute authorizes a county to issue special tax bonds at their face value, to bear 5 per cent interest, and time certificates of deposit for a short period of time bearing only 2 per cent are partly taken in exchange, the difference in the interest rate reduces the purchase price of the bonds to below par, and the transaction is void, requiring a resale in accordance with the terms of the statute.

BROWN, J., concurring; CLARK, C. J., dissenting; WALKER, J., dissenting.

MOTION made before *Harding, J.,* 14 January, 1916, to continue a restraining order to the hearing; from ALEXANDER.

This is an action brought by J. F. Moose and others, residents and taxpayers of Alexander County, against the board of commissioners of said county, to perpetually restrain said board.

1. From issuing and selling $150,000 of road bonds to Sidney Spitzer & Co., pursuant to the terms of a certain contract.

2. To perpetually restrain said board from levying a special tax upon the taxable property and polls in said county, which, when added to the general tax levy for necessary State and county purposes, would exceed 66 2/3 cents on the hundred dollars valuation of property, and $2 on each taxable poll.

3. That said board be perpetually restrained from appropriating any funds raised by general taxation for necessary county purposes to the payment of the principal or interest of said bonds, if issued.

4. That said board be perpetually restrained from performing the contract with Sidney Spitzer & Co., by which the board undertook to pledge the revenues of said county, derived from general taxation, to the payment of the principal and interest of said bonds.

5. That said board be perpetually restrained from contracting with Spitzer & Co. to bind future boards of commissioners of said county to continue to levy special taxes upon the property and the polls in said county, in excess of that authorized by the bond act above referred to, construed in connection with Article V of the Constitution.

The General Assembly of 1915 passed a good roads act for Alexander County (ch. 27, Pub. Local Laws), by the terms of which the commissioners of the county, under the restrictions and limitations contained in said act, were authorized to issue and sell $150,000 of road bonds of the county. These restrictions are as follows:

Section 1 of the act provides: "That none of the bonds authorized by this act shall be disposed of, either by sale, exchange, hypothecation, or otherwise, for a less price than their face value."

Section 17 of the act provides, among other things: "The board of commissioners of the county shall offer for sale, at such time or times,

such number of said bonds as may be determined by the good roads commission . . . and the *proceeds of the sale* of said bonds shall be delivered to the treasurer of the county."

Section 11 of the act creates the good roads commission of the county, declares it shall be composed of the board of commissioners and the board of education of the county, which, when organized, shall take the oath of office, etc. Other sections of the act places the supervision and control of the construction and repair of roads entirely in the hands of this commission.

Section 1 of the act also provides that: "The said board of commissioners may divide the said issue (of bonds) into three series."

Section 4 of the act provides: "In order to pay the interest of said bonds, create a sinking fund for taking up said bonds at maturity . . . the board of commissioners of Alexander County . . . shall annually compute the levy, at the time of levying other county taxes, a sufficient special tax on all polls, all real estate and personal property . . . always observing the constitutional equation between the taxes on the property and the taxes on the poll: *Provided,* there shall not be at any time levied in the county of Alexander for the purposes of road improvement . . . a tax greater than 33 1/3 cents on the hundred dollars valuation of property and $1 on each poll."

The act also provides that said bonds shall not be issued until authorized by a majority vote of the qualified voters of the county at an election to be called and held for that purpose.

At an election called and held for the purpose aforesaid, a majority of the qualified voters of the county voted in favor of the bond issue. Thereafter, the board of commissioners, on 6 April, 1915, advertised for the sale of said bonds in three series of $50,000 per series.

No satisfactory bids having been offered for such bonds, the said board thereafter, without advertisement, on 1 November, 1915, entered into a contract with Sidney Spitzer & Co., by the terms of which they undertook to sell said bonds in seven series, and to accept in payment thereof $5,000 in cash and seventeen certificates of deposit of the American National Bank of Wilmington, N. C., due from three to nineteen months thereafter, and bearing 2 per cent interest.

This contract provided that it "is based upon the legality of the issuing of said bonds and the right to levy a tax under the act upon which they are issued . . . and that the terms of this sale be in accordance with the provisions of said act."

His Honor dissolved the restraining order theretofore issued, and the plaintiffs appealed.

*A. C. Payne and Cansler & Cansler for plaintiffs.*
*L. F. Klutz, W. D. Turner, and Tillett & Guthrie for defendant.*

ALLEN, J.  The tax on the poll and on property of the value of $300 is now $2 in the county of Alexander for ordinary State and county purposes, and the General Assembly has by statute authorized the county to issue bonds in the sum of $150,000 for the purpose of constructing and maintaining roads, with provision in the statute for the levy of a poll and property tax in excess of $2, to be used in paying the principal and interest of the bonds.

Is this statute constitutional?

The question is presented in the most favorable aspect for sustaining the constitutionality of the statute, as the bonds are to be issued for constructing roads, which is a necessary expense (*Hargrave v. Comrs.,* 168 N. C., 626); the statute has the approval of the General Assembly, and it has been ratified by popular vote; and if under these conditions this statute cannot be upheld, no tax levy by the county exceeding $2 on the poll and property can be valid for any purpose.

The question is all important and vital, involving as it does the setting aside of an act of the General Assembly, and saying to the people that they have not the power under the Constitution to impose a tax upon themselves even for a necessary expense.

It may also have an important effect upon the credit of the State, and may prevent future development in the counties, because according to the report of the Tax Commission for the year 1914, there were then fifty-eight counties in which the poll tax exceeded $2, and ninety-seven in which the property tax exceeded that amount, and the total indebtedness of these counties, not including the indebtedness of special districts in the counties, was $10,196,363.26.

Bonds cannot be issued and sold unless supported by valid tax levies, and if the statute now before us is unconstitutional, not only are the taxes invalid which are now being collected in these counties to pay the principal and interest of the indebtedness, but the people of the counties have no power to impose on themselves additional taxes if their roads and bridges are swept away by floods or their courthouses, jails, and county homes are destroyed by fire.

If, however, these conditions arise from a proper and legitimate construction of the Constitution, we must abide the result.  As was well said by *Associate Justice Walker* in the concurring opinion in *Collie v. Comrs.,* 145 N. C., 179, "When the people have clearly ordained what shall be done, we, as judges, have nothing to do but to obey and to execute their will.  Whether the particular provisions in question are wise or unwise is not for us to determine."

The section of the Constitution directly involved is the first section of Article V, which reads as follows: "The General Assembly shall

levy a capitation tax on every male inhabitant of the State over 21 and under 50 years of age which shall be equal on each to the tax on property valued at $300 in cash. The commissioners of the several counties may exempt from capitation tax in special cases, on account of poverty and infirmity, and the State and county capitation tax combined shall never exceed $2 on the head."

Related to this section, and bearing on its construction, are sections 2 and 6 of the same article, which are in the following language:

Section 2. "The proceeds of the State and county capitation tax shall be applied to the purposes of education and the support of the poor, but in no one year shall more than 25 per cent thereof be appropriated to the latter purpose."

Section 6. "The taxes levied by the commissioners of the several counties for county purposes shall be levied in like manner with the State taxes, and shall never exceed the double of the State tax, except for a special purpose, and with the special approval of the General Assembly."

Three contentions are made as to the construction of the first section of Article V.

1. That the limitation of $2 on the poll and $2 on property of the value of $300 applies to all taxes for all purposes, and that this amount cannot be exceeded on the poll or on property, although the tax may be levied for a special purpose and with the special approval of the General Assembly.

2. That the limitation on the poll is absolute and can never be exceeded for any purpose, but that the limitation upon property may be exceeded for a special purpose with the special approval of the General Assembly.

3. That the limitation on the poll and on the property applies only to taxes levied for the ordinary expenses of the State and county governments, and that the limitation on the poll and on property may be exceeded for a special purpose with the approval of the General Assembly.

If either of these constructions, except the last, is adopted, the statute is invalid in its entirety, because, after directing a levy on the poll and property tax, it links the two together and makes it impossible to separate them, by providing, "always observing the constitutional equation between the taxes on the property and the taxes on the poll."

In arriving at a correct conclusion, the subject being dealt with in the Constitution (taxation) and the nature and purpose of the Constitution itself may be considered.

"The power to tax is an attribute of sovereignty so vital and so necessary to the existence of a State that it cannot be held to have been for-

bidden as to any particular subject except where the policy obviously commends itself to our sense of justice or is most clearly expressed." *Pullen v. Comrs.,* 66 N. C., 363.

"The power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the Government may choose to carry it. The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax the Legislature acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation. The people of a State, therefore, give to their Government a right of taxing themselves and their property; and as the exigencies of government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislator, and on the influence of the constituents over their representatives, to guard them against its abuse." *McCulloch v. Maryland,* 4th Wheat., 316.

Of course, this principle is subject to the qualification that the power to tax cannot be exercised when prohibited in the Constitution; but it serves the purpose of showing that the power, which belongs to the legislative branch, is essential to the existence of the State, and that in its exercise the Legislature is supreme, except as the Constitution limits its power.

We find this scheme of taxation in a constitution, and while we would not subscribe to the doctrine of Napoleon that "constitutions ought to be short and obscure," a constitution is permanent in its nature, deals with the future, and as its framers cannot foresee and anticipate conditions that may arise in the growth and development of the State, it deals largely in general principles and not in details.

"A constitution, unlike a statute, is intended not merely to meet existing conditions, but to govern the future. It has been said that the term 'constitution' implies an instrument of a permanent nature. Since it is recognized that its framers could not anticipate conditions which might arise thereafter in the progress of the Nation, and could not establish all the law which from time to time might be necessary to conform to the changing conditions of a community, as a rule a constitution does not deal in details, but enunciates the general principles and general directions which are intended to apply to all new facts that may come into being, and which may be brought within these general principles or directions. It has been said that it would have been an unwise attempt to provide, by immutable rules, for exigencies which, if foreseen at all, must have been seen dimly, and which can be best provided for as they occur, and that it would have deprived the Legis-

lature of the capacity to avail itself of experience, to exercise its reason, and to accommodate its legislation to circumstances." 6 R. C. L., 16.

"A constitution is framed for ages to come, and is designed to approach immortality as nearly as human institutions can approach it." *Cohens v. Virginia*, 6 Wheat., 264.

*Story, J.*, speaking of the Constitution of the United States in *Martin v. Hunter*, 1 Wheat., 304, uses language which is applicable to all constitutions. He says: "The constitution unavoidably deals in general language. It did not suit the purpose of the people, in framing this great charter of our liberties, to provide for minute specifications of its powers, or to declare the means by which those powers should be carried into execution. It was foreseen that this would be a perilous and difficult, if not an impracticable, task. The instrument was not intended to provide merely for the exigencies of a few years, but was to endure through a long lapse of ages, the events of which were locked up in the inscrutable purposes of Providence. It could not be foreseen what new changes and modifications of power might be indispensable to effectuate the general objects of the charter; and restrictions and specifications which, at the present, might seem salutary, might, in the end, prove the overthrow of the system itself. Hence its powers are expressed in general terms, leaving to the Legislature, from time to time, to adopt its own means to effectuate legitimate objects, and to mold and model the exercise of its powers as its own wisdom and the public interests should require."

If, therefore, the scheme of taxation, necessary to the existence of the State, is provided for in the Constitution, if the Constitution is permanent in its nature and deals with the future, if its purpose is to deal in general principles and not in details, is it not the natural and reasonable conclusion that the framers of the Constitution were only intending to place limitations on the exercise of the power of taxation as to those expenses of government which they could reasonably foresee and anticipate—the ordinary expenses—and not as to extraordinary expenses for special purposes arising from time to time and far beyond human vision and foresight?

They might form a reasonable estimate of the ordinary expenses of the Government for the future and be willing to fix a maximum of taxation for that purpose, but they would have been rash indeed to have limited the power of their posterity to deal with exigencies and emergencies, which arise in the life of a State, which they could not conceive or imagine.

This, as it seems to us, has been the construction placed on this section of the Constitution—that it applies only to the ordinary expenses

of government and not to those for a special purpose—by the Legislative, Executive, and Judicial Departments, and by the people.

By the Legislative in enacting hundreds of statutes authorizing the levy of taxes for general purposes on polls and property in excess of the limitation; by the Executive in collecting and expending these taxes; by the Judicial in declaring this to be the true meaning of the section; and by the people in voting for the taxes in many instances and paying them.

Let us now turn to the language of the Constitution and to the decided cases and see how far the statement is sustained that the construction of the Constitution has been definitely settled by judicial decision.

In sections 1 and 2 the poll tax is referred to as "the State and county capitation tax," and this language must receive the same construction in both sections. In section 1 it is declared that the poll tax "shall be equal on each to the tax on property valued at $300" and that "the State and county capitation tax shall never exceed $2 on the head," and in section 2, that "The proceeds of the State and county capitation tax shall be applied to the purposes of education and the support of the poor." The words "shall be applied," in section 2, "shall be equal" and "shall never exceed," in section 1, are equally imperative, and if the poll tax cannot exceed $2 for a special purpose under section 1, neither can any part of it be applied to a special purpose, under section 2, nor can it be greater or less than the property tax.

The first section establishes the equation of taxation to be maintained between property and poll, and if the section applies to all taxes it must be maintained in all cases and cannot be disregarded when taxes are levied for a special purpose; and it also declares for the principles of a limitation of taxation on property and the poll in the first part of the section and fixes the amount of the limitation on both in the concluding sentence; and if this limitation applies to all taxes it cannot be exceeded for a special purpose.

The authorities show that the limitation applies to property and poll.

"It is too plain to admit of argument that the intent of this section was to establish an invariable proportion between the poll tax and the property tax, and that as the former is limited to $2 on the poll, so is the latter to $2 on the $300 valuation of property." This was said by *Rodman, J.,* a member of the Convention which framed the Constitution, in *R. R. v. Holden,* 63 N. C., 427.

This section commands two things:

"1. That the poll tax shall always be equal to that on $300 valuation of property. This has been called the equation of taxation.

"2. That the State and county poll tax shall not exceed $2. This fixes the limit of taxation on polls, and consequently on property.

"These two directions are equally definite and positive; they are in no wise inconsistent with each other; it is impossible that one has any more favor or sanctity than the other merely because it comes earlier or later in the sentence; they must be equally binding on the Legislature." *Rodman, J.,* in *Winslow v. Weith,* 66 N. C., 432.

"It is well settled that, for the ordinary expenses of government, both State and county, the first section of Article V of the Constitution places the limit of taxation and preserves the equation between the capitation and the property tax—the capitation tax never to exceed $2, and the tax upon property valued at $300 to be confined within the same limit." *Board of Education v. Comrs.,* 111 N. C., 580.

It has not only been held that the limitation is on property and poll, but also that property is the standard for ascertaining the amount of the poll tax. *Kitchin v. Wood,* 154 N. C., 565.

If, therefore, these sections refer to taxes levied for all purposes, it follows that the equation of taxation and the limitation upon property and the poll must always be maintained, and that the poll tax can never be applied to purposes other than education and the support of the poor; and that if the sections only deal with taxation for the ordinary expenses of the State and county, and not to those for special purposes, there is no limitation upon this power of the General Assembly in authorizing the levy of taxes on property and the poll for special purposes, except that of submitting the question to a vote of the people if not for necessary expenses.

The authorities sustain the latter view by stating clearly and definitely that section 1 applies only to taxation for ordinary expenses, by sustaining levies for special purposes which did not maintain the equation and exceeded the limitation, and by declaring legal the application of the poll tax to special purposes.

In *Jones v. Comrs.,* 107 N. C., 248, *Merrimon, C. J.,* after discussing several sections of the Constitution, says: "We are therefore of opinion that the equation and limitation of taxation established by the Constitution (Art. V, sec. 1) applies only to taxes levied for the ordinary purposes of the State and counties"; and this language is quoted and approved by *Hoke, J.,* in *Perry v. Comrs.,* 148 N. C., 524.

In *Wingate v. Parker,* 136 N. C., 370, *Clark, C. J.,* says, after citing section 1 of Article V: "It is clear that this section applies solely to State and county taxation," and he then quotes with approval from *Jones v. Comrs., supra,* as follows: "But it is settled by many decisions of this Court that it (Art. V, sec. 1) does not establish an exclusive

system or scheme of taxation applicable and to be observed in all cases and for all purposes; that, on the contrary, it applies only to the revenue and taxation necessary for the ordinary purposes of the State and the several counties thereof."

In *Collie v. Comrs.*, 145 N. C., 182, *Walker, J.*, in his concurring opinion: "The general limit of taxation is fixed, of course, at 66 2/3 cents on the $100 in value of property, as I have already indicated, by the provision in regard to the equation, and the maximum of the poll tax, which is $2 on the $300 of property at its true value in cash. Const., Art. V, sec. 1. All the above provisions were evidently intended to apply to taxes laid for general State and county purposes."

The decisions are equally clear and definite in establishing the principle that the equation and limitation of taxation apply only to taxes levied for ordinary expenses, and have no application to taxes levied for a special purpose, and that poll taxes levied for special purposes may be applied to that purpose and not to education and support of the poor.

The case of *R. R. v. Comrs.*, 148 N. C., 220, and *R. R. v. Comrs.*, 148 N. C., 248, decide unequivocally that the equation need not be observed when the tax is for a special purpose; and *Board of Education v. Comrs.*, 137 N. C., 310, and *Crocker v. Moore*, 140 N. C., 432, are equally positive in holding that a part of the poll tax may be applied to special purposes and not to education and the support of the poor.

In the last case *Clark, C. J.*, answering a constitutional objection to the statute then being considered, says: "In that the act applies a part of the county capitation tax to the use of the public roads in violation of the Constitution, Art. V, sec. 2, which appropriates the State and county poll tax 'to the purposes of education and the support of the poor.' But that provision applies to the levy of taxation for general, not special purposes. *Board of Education v. Comrs.*, 137 N. C., 310."

The leading case on the power to exceed the limitation on *property and the poll* for special purposes is *Herring v. Dixon*, 122 N. C., 422, in which the present *Chief Justice* not only gives a valuable analysis of section 1 of Article V of the Constitution, but he also answers specifically the objection that the tax on the property and the poll cannot exceed $2, as follows:

"2. The plaintiff, however, further contends that the levy is unconstitutional because when this special levy is added to the levy by the State and the ordinary county levy, the total exceeds $2 on the poll and 66 2/3 cents on the $100 value of property. This tax, however, is authorized by the Constitution, Art. V, sec. 6, since it has the special approval of the General Assembly and is for a special purpose, that of

raising funds by which the county can put the roads and bridges in better condition than could be done within the constitutional limitation upon taxation. *Brodnax v. Groom,* 64 N. C., 244; *Williams v. Comrs.,* 119 N. C., 520; *Evans v. Comrs.,* 89 N. C., 154; *Halcombe v. Comrs.,* 89 N. C., 346. Article V, section 6, confers upon the Legislature power to authorize a county by special act and for a special purpose 'to exceed double the State tax.' As the State tax is 43 cents, this would have empowered the Legislature to authorize the county to go far beyond the point to which this tax reaches, and, as the greater includes the less, authorizes this levy, which is well within that limit, though exceeding the limitation of 66⅔ cents to the $100 and $2 on the poll."

If this is the law, it answers every objection of the plaintiffs to the statute before us, because *it sustains a tax levy on the poll and on property for roads,* "though exceeding the limitation of 66⅔ on the $100 and $2 on the poll"; and that this was a point decided and not a dictum appears from the opinion of *Connor, J.,* in *R. R. v. Comrs.,* 148 N. C., 237, where he says: "In *Herring v. Dixon,* 122 N. C., 420, the only question presented and decided was whether a tax for working the public roads was for a special purpose for which the Legislature could authorize the levy of a property and poll tax beyond the limitation."

The case has never been questioned and, on the contrary, it has been approved in twelve decisions of this Court, notably, in *Hargrave v. Comrs.,* 168 N. C., 627, where after citing *Herring v. Dixon,* and other decisions, *Clark, C. J.,* says: "We know of no reason to question the correctness of these decisions."

Following the case of *Herring v. Dixon* is *Tate v. Comrs.,* 122 N. C., 812. The facts in this case are that the taxes on *property and the poll* had reached the constitutional limit in Haywood County, and under this condition the General Assembly passed an act requiring the commissioners of the county to levy an additional tax on the poll and on property to be used in building and maintaining roads and providing in the act, "the constitutional equation to be observed at all times." The commissioners refused to levy the taxes, upon the ground that the statute was unconstitutional, and the action was instituted to compel them to do so by the writ of mandamus.

This Court held, *Clark, C. J.,* writing the opinion, that the statute was constitutional; that the constitutional limitation did not apply, and directed the mandamus to issue compelling the levy of the taxes.

Note that the statute required the equation of taxation to be observed, and that, therefore, the tax on property could not be valid if the tax on the poll was invalid, and that the Court ordered mandamus to issue to compel the levy of a tax on the poll and on property, in

excess of the constitutional limitation, for the purpose of constructing and maintaining roads.

If this case was correctly decided (and it has been approved more than twenty times, and in *Hargrave v. Comrs.,* 168 N. C., 627, the Court, after citing it and other cases, says: "We know of no reason to question the correctness of those decisions"), it settles the constitutionality of the statute before us, because in both the taxes are on the poll and on property, the taxes on both are in excess of the limitation, the purpose for levying the taxes is the same, and the same safeguards are around both, except in this: we have a vote of approval by the taxpayers themselves, which was absent in the *Tate case.*

In *Crocker v. Moore,* 140 N. C., 432, approving *Tate v. Comrs., Clark. C. J.,* says: "The language of the act authorizing the levy of a special tax for these roads is almost identical with that sustained in *Herring v. Dixon,* 122 N. C., 420, and *Tate v. Comrs., ibid.,* 812. The Legislature can authorize a county to exceed the constitutional limitation for necessary purposes, and working the roads is a necessary purpose."

This not only approves the principle declared, but also the decision on the facts, because he says the language of the two statutes "is almost identical."

There are expressions in *R. R. v. Comrs.,* 148 N. C., 220, contrary to this view, and some in its favor, but it was not decided in that case that the poll tax could not exceed $2 for special purposes, and the point could not have been decided, because neither in that case nor in the subsequent case by the same name in the same volume did the statute before the Court authorize the levy of a poll tax.

On the contrary, in the *Mecklenburg case* the statute forbade the levy of a poll tax in excess of $2, and in the *Buncombe case* authority was only conferred to levy the taxes on "taxable property," and the only questions raised and decided were whether the equation of taxation must be observed in levying taxes in excess of the limitation for special purposes, and whether the levy on property could exceed the limitation.

As no poll tax was levied in these cases, and there was no attempt to do so, and as the statute did not authorize the levy of a poll tax, how can it be said that the *Court* then *decided* that the limitation on the poll could not be exceeded for a special purpose and with the special approval of the General Assembly?

If, however, it had been so decided, the decision is greatly weakened if not destroyed by the subsequent case of *Perry v. Comrs.,* 148 N. C., 521. in which it was held to be valid to levy a poll tax in excess of the constitutional limitation in a school district. It did not appear in the case that the school district did not have a four months school, and the

section of the Constitution relied on in *Collie v. Comrs.,* 145 N. C., 170, was not invoked in support of the decision, which was not limited to schools. This appears clearly from the concurring opinion of *Connor, J.,* who says on page 530: "Fortunately, in this case the tax goes to the support of the public school; but there is nothing in the Constitution, as we interpret it, by which such taxation may be confined to this purpose."

*Justice Hoke,* writing the opinion for the Court, quotes from *Jones v. Comrs., supra,* that "The equation and limitation of taxation established by the Constitution (Art. V, sec. 1) applies only to taxes levied for the ordinary purposes of the State and county," and finally rests the decision upon the ground that by cutting off a part of the county into a special district it is made a quasi municipal corporation, and as such falls under Art. VII, sec. 7, of the Constitution, and is not bound by the constitutional limitation on the poll.

It is therefore decided in that case that a poll tax in excess of the limitation may be levied and collected in a school district, and the principle, as shown by the opinion of *Connor, J.,* is not confined to school districts, but extends to districts such as roads.

If so, and a county cannot do so under *R. R. v. Comrs.,* we have the situation under the Constitution of a part of a county having authority to levy and collect taxes when the whole county is forbidden to do so for the same purpose; and a further result is that the General Assembly may divide a county into the two districts and incorporate them, and authorize a valid tax on the poll in excess of the constitutional limitation in each when it cannot permit and direct it in the county as a whole for the same purpose.

These three cases of *R. R. v. Comrs. of Mecklenburg,* 148 N. C., 220; *R. R. v. Comrs. of Buncombe,* 148 N. C., 248; and *Perry v. Comrs.,* 148 N. C., 521, were correctly *decided,* and are in harmony with the principle which underlies this opinion, to wit, that the equation and limitation of taxation prescribed by Article V, section 1, of the Constitution apply only to taxes for the ordinary expenses of the State and county government, and that the levy of taxes for special purposes is committed by the Constitution to the discretion of the General Assembly, which may, as to such taxes, exceed the limitation on the poll and on property, and may levy the tax on the poll and property, or on property alone, without observing the equation, subject to the qualification that if the tax is not for a necessary expense it must be submitted to a vote of the people.

The opinions in the first two of these cases were written by the same judge, and as the questions were the same, the leading opinion was written in the *Mecklenburg case.*

The action was brought to restrain the collection of certain taxes on property in excess of the limitation, upon the ground that a corresponding poll tax had not been levied, or, in other words, because the equation of taxation had not been observed.

The commissioners replied that they were acting under a statute which provided that: "The equation of taxation prescribed in the Constitution applies only to taxation levied for the ordinary purposes of the State and county, and no poll tax shall be levied, except as hereinafter provided, in excess of $2 for State and county purposes combined; and all acts levying or authorizing the levy of taxes for special purposes which contain authority to levy a poll tax in excess of $2 in the aggregate for all purposes are hereby repealed or modified so as to restrict and provide that the poll tax for State and county and special taxes combined shall never exceed $2."

The question for decision, therefore, in the *Mecklenburg case* was as to the equation of taxation, while the question before us is as to the limitation of taxation.

It was not whether the commissioners could levy more than $2 on the poll, or the Legislature authorize them to do so, but could they levy a tax on property and refuse to levy a tax on the poll, when the Legislature had said no poll tax should be levied?

The single inquiry, then, before the Court was, Has the General Assembly the power to authorize the levy of a tax on property for a special purpose in excess of the limitation, and at the same time command that no corresponding poll tax should be levied? and it was answered, as we hold, in the affirmative, while the inquiry now is, Has the General Assembly the power to authorize the levy of a tax for a special purpose on the poll and on property in excess of the limitation?

The doubt expressed by the learned judge then writing for the Court was whether the first of these questions had been answered by the previous decisions of the Court, and not as to the second, and he makes this clear as he proceeds with the discussion. He reviews many of the cases, and among other things says: "In *Herring v. Dixon*, 122 N. C., 420, the only question presented and decided was whether a tax for working the public roads was for a special purpose for which the Legislature could authorize the levy of a property and poll tax beyond the limitation. No question of equation was presented, because the poll tax was levied. The same is held in *Tate v. Comrs.*, 122 N. C., 812."

Language could not be clearer or more unequivocal, and it commits the Court, all of the members having concurred, to the positive statement that the question *presented* and *decided* in *Herring v. Dixon* and in *Tate v. Comrs.* was whether a tax for working the public roads was

for a special purpose for which the Legislature could authorize the *levy of a property and poll tax beyond the limitation;* and that is the only question now before us.

He concluded that the two cases cited were not authority for the position the Court was then considering as to the equation of taxation, saying: "No question of equation was presented because the poll tax was levied."

He was evidently fearful that in the midst of an elaborate discussion of a vexed question he might say something outside of the case, and to avoid binding the Court, if he did so, he took the precaution before the conclusion of his opinion to state the precise point of discussion. He said: "We decide that the commissioners of Mecklenburg acted in accordance with the statute in failing to levy more than $2 on the poll, and that the statute is a valid exercise of power by the Legislature. This conclusion renders it unnecessary to discuss the much vexed question as to what is or is not a special purpose within the meaning of section 6, Article V."

In other words, he says it was decided that the commissioners performed their duty in failing to levy more than $2 on the poll, because the Legislature had said in the act before the Court that no poll tax in excess of $2 should be levied for ordinary expenses of the State and county *and for special purposes,* and that this was a valid exercise of legislative power, because as to these taxes it was not necessary to observe the equation of taxation, and he adds: "This conclusion renders it unnecessary to discuss the much vexed question as to what is or is not a special purpose within the meaning of section 6, Article V," which we now have to decide.

If, therefore, there are expressions in the opinion relating to the limitation of taxation, they do not come within the rule of *stare decisis,* which has for its purpose uniformity, certainty, and stability in the law.

"The doctrine of *stare decisis* contemplates only such points as are actually involved and determined in a case, and not what is said by the Court or judge outside of the record or on points not necessarily involved therein. Such expressions, being *obiter dicta,* do not become precedents. It is a maxim not to be disregarded, that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit where the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care and considered in its full extent. Other principles

28—172

which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated. It cannot be reasonably expected that every word, phrase, or sentence contained in a judicial opinion will be so perfect and complete in comprehension and limitation that it may not be improperly employed by wresting it from its surroundings, disregarding its context and the change of facts to which it is sought to be applied, as nothing short of an infinite mind could possibly accomplish such a result. Therefore, in applying cases which have been decided, what may have been said in an opinion should be confined to and limited by the facts of the case under consideration when the expressions relied upon were made, and should not be extended to cases where the facts are essentially different. When this rule is followed, much of the misapprehension and uncertainty that often arise as to the effect of a decision will be practically avoided." 7 R. C. L., 1000, 3, 4.

The case of *Perry v. Comrs.*, decided five months after *R. R. v. Comrs.*, presented the question of the limitation on taxation on the poll and property in a special school-tax district.

A tax of 20 cents on property of the value of $100 and 60 cents on the poll in excess of the constitutional limitation was levied, and the action was brought by the plaintiff, who was subject to the poll tax, to restrain its collection upon the ground that it was unconstitutional; but the Court declared the tax to be legal, which is in direct conflict with the decision in *R. R. v. Comrs.*, if it means, as now contended, that Article V, section 1, of the Constitution applies to all taxes, and that the poll tax can *never* exceed $2 for any purpose.

If the prohibition in the Constitution applies to all taxes, it is of little avail to deny it to the counties and to permit subdivisions of counties, cities, and towns to disregard it at pleasure; and this is the condition that will exist if we adopt the construction placed on *R. R. v. Comrs.* by the plaintiffs and *Perry v. Comrs.* stands.

The learned judge who wrote the opinion in *Perry v. Comrs.* first discusses the cases from Mecklenburg and Buncombe and other cases, and then follows this comment, in which all the judges concurred: "True, these decisions are directly on the question of the equation of taxation established by Article V, but every reason for the ruling on the question of the equation bears in full force on the subject of this restriction on the amount of the poll tax, with the additional and conclusive reason that such restriction in express terms is confined to the 'State and county capitation tax.'" What can this mean except that the question for decision in the Mecklenburg and Buncombe cases was whether the equation of taxation must be observed in levying taxes for special purposes, and that "every reason" for holding that the

equation did not apply, as was done in those cases, "bears with full force" on the subject of the restriction on the amount of the poll tax, with the "additional and conclusive reason that such restriction in express terms is confined to the 'State and county capitation tax.' "

Again, *Justice Hoke* gives the reason which induced the framers of the Constitution to restrict the limitation to taxes for ordinary expenses of government. He says: "Anticipating, as the result has proved, that the general State and county taxation would very generally reach the limit of $2, the framers of the Constitution did not deem it well to place an arbitrary restriction on all local efforts in communities whose enterprise might suggest and financial condition justify a greater amount of taxation than that followed by the general law. And it was no doubt further considered that the restriction contained in section 7, forbidding the levy of any unusual tax, except when sanctioned by a majority of the qualified voters of a given district, would operate as a wholesome check against excessive taxation or extravagant expenditure. Certain it is that, with the exception of the restraints indicated, the matter is not further affected by the Constitution, but is referred entirely to the legislative will. As to taxation within these special districts, it is theirs to observe or disregard the equation established by Article V in reference to State and county taxes and to exceed or abide by the limit established in said article in reference to general taxation."

These cases, therefore, instead of being in conflict with the position of the defendant, support it, in that:

1. It is decided in *R. R. v. Comrs.* that it is not necessary to observe the equation of taxation in levying taxes for special purposes, and it is said in *Perry v. Comrs.* that there is stronger reason for holding that the limitation does not apply to such taxes.

2. The cases of *Herring v. Dixon* and *Tate v. Comrs.* are recognized as authority, and that they decide that the limitation on the poll and on property may be exceeded for roads, a special purpose.

3. It is held in *Perry v. Comrs.* the poll tax may exceed $2 in a subdivision of a county, notwithstanding the constitutional provision that the State and county capitation tax shall never exceed $2.

We are therefore of opinion that the statute is constitutional and that it is within the power of the General Assembly to authorize a levy of taxes for special purposes on property and on the poll in excess of the limitation prescribed in Article V, section 1, of the Constitution, and that as to such taxes it is not compelled to maintain the equation between property and the poll.

The construction gives force and vitality to the language in section 6 of Article V, "except for a special purpose and with the special

approval of the General Assembly," which otherwise would have no practical operation, because if this section means that the counties can never exceed double the State tax for ordinary purposes, but may do so for special purposes, *within the limitation, however, of section 1,* there has been no time since the Constitution of 1868 was adopted, except possibly one year, when the State tax and double that amount, if levied by the counties, for ordinary expenses, would not exceed the limitation, leaving nothing for special purposes.

It must be assumed that the men who wrote the Constitution at least knew of conditions then existing; and still, at the first session of the General Assembly after its adoption a State tax of $1.05 on the poll and 35 cents on property of the value of $100 was levied (Laws 1868-9, ch. 108), and it is significant that the statute says: "This tax shall be levied in addition to such special taxes as are authorized by the General Assembly."

Under this article, and giving effect to section 6 of Article V, the counties could not levy double the State tax for ordinary expenses, and within the limitation of section 1 no taxes could be levied for special purposes, although it would seem the General Assembly thought it had authority to authorize this to be done.

If none of these positions can be maintained, the tax provided in the statute is valid, as counties as well as cities and towns are embraced in Article VII, section 7, of the Constitution, and it was so held in *Pritchard v. Comrs.,* 159 N. C., 636, in which there was a levy on polls and property for roads; and corporations within that article of the Constitution may exceed the limitation on the poll and property when authorized so to do by the General Assembly, as was held in *Perry v. Comrs., supra,* and in other cases.

The language of this section is, "No county, city, town, or other municipal corporation shall," etc., and the only authority for the levy of special taxes for schools in special school districts is that they come under the designation "municipal corporations."

If, therefore, a municipal corporation may exceed the limitation on the poll and property under this section of the Constitution, as was held in *Perry v. Comrs., supra,* why may not a county do so?

*Hoke, J.,* said in the *Perry case,* after reviewing the authorities: "From these authorities it is clear that the tax in question (the 60 cents in excess of the $2 already levied for State and county purposes) is not within the restriction of Article V, section 1, of the Constitution, but that the same is a tax imposed for a definite purpose by a special taxing district, coming as a public quasi corporation under the provisions of Article VII of the Constitution, and subject only to the limitations and restrictions contained in that article, notably, in

section 7, that no county, city, town, or other municipal corporation shall contract any debt, pledge its faith, or loan its credit, nor shall any tax be levied or collected by officers of the same, except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein; and of section 9, to the effect that all taxes levied shall be uniform and *ad valorem*. In aid of the construction we place upon the provision of the Constitution bearing upon this question, good reasons could be suggested for the distinction in the two classes of taxation. Anticipating, as the result has proved, that the general State and county taxation would very generally reach the limit of $2, the framers of the Constitution did not deem it well to place an arbitrary restriction on all local effort in communities whose enterprises might suggest and financial condition justify a greater amount of taxation than that allowed by the general law. And it was no doubt further considered that the restriction contained in section 7, forbidding the levy of any unusual tax, except when sanctioned by a majority of the qualified voters of a given district, would operate as a wholesome check against excessive taxation or extravagant expenditure. Certain it is that, with the exception of the restraints indicated, the matter is not further affected by the Constitution, but is referred entirely to the legislative will. As to taxation within these special districts, it is theirs to observe or disregard the equation established by Article V in reference to State and county taxes, and to exceed or abide by the limit established in said article in reference to general taxation."

Counties, cities, towns, and municipal corporations are mentioned in the section; the same authority to levy taxes is conferred on each; and if the municipal corporation may exceed the limitation on the poll and property, the same power cannot be denied to the counties.

It would seem that all of the authorities may be reconciled upon the ground that Article V of the Constitution provides for the ordinary expenses of the State and county, excepting therefrom, as to counties, special purposes, and that Article VII provides for all the expenses of municipal governments, including counties with the limitation that special taxes must have the approval of the General Assembly.

The learned judge who wrote the opinion in *R. R. v. Comrs.*, 148 N. C., 220, seems to have reached this conclusion, and also that the equation and limitation in section 1 do not apply to taxes levied for special purposes, as he says in the valuable work on the Constitution by Connor and Cheshire, page 258, commenting on Article V, section 1:

"This equation and this limitation on taxation have no application to taxes levied for a special purpose under Article V, section 6, nor

to taxes necessary to meet an obligation assumed under Article VII, section 7. *Board of Education v. Comrs.*, 137 N. C., 310; *Jones v. Comrs.*, 107 N. C., 248; *R. R. v. Comrs.*, 148 N. C., 220."

In coming to this conclusion, if it was proper in any case for us to be influenced by the earnest and eloquent plea of counsel for the plaintiffs in behalf of the man who owns no property and is only liable for a poll tax, we could not consider it when, as in this case, there is no allegation in the complaint that either of the plaintiffs is in this class, and when the grievance complained of is that the levy and collection of the tax "would cast a cloud upon the title of the real and personal property now owned by these plaintiffs and the other taxpayers in said county."

It is probable that the man who is only liable for a poll tax is content, as he will be relieved from six days work on the public roads by the payment of $1 under the new system of working the roads in Alexander County.

Under the old system of working the roads in Alexander County all able-bodied males between the ages of 18 and 45 were liable to work on the roads six days in each year (Rev., sec. 2725), but this has been superseded by the new system, and a poll tax not greater than $1 has been substituted for six days labor.

Nor need there be any fear that any additional restrictions or burdens will be placed on the right of suffrage.

This right is carefully guarded, and it is specifically provided in Article VI, section 4, that the poll tax which the voter is required to pay is the one "prescribed in Article V, section 1," which is the one for ordinary expenses of the State and county, and which cannot exceed $2.

This was held in *Perry v. Comrs., supra,* where *Hoke, J.,* says: "It is suggested that the construction we give to the Constitution will in certain instances make it possible, by the levy of an exorbitant poll tax, to deprive many citizens within a special district of the right to vote, and this by reason of the provision of the Constitution, 'That no person shall be allowed to vote unless he shall have paid his poll tax for the previous year.' But not so. The language of Article VI, section 4, of the Constitution, being the article relating to and regulating the right of suffrage, provides that no one shall be entitled to vote unless he has paid his poll tax for the previous year, 'as prescribed by Article V, section 1, of the Constitution,' thus providing that on payment of the poll tax allowed and established in Article V the right of suffrage in this respect is established; and this poll tax, as we have seen, can never exceed $2."

This disposes of the principal question involved in the appeal.

The plaintiffs, however, insist that if the bond issue and the taxes are valid, that the contract for the sale of the bonds is illegal because not, as required by the statute, for their face value; and as we construe the contract of sale, this position is well taken.

The statute requires the bonds to be sold at their face value, and under the contract the purchaser gets the bonds drawing interest at 5 per cent and pays therefor .$5,000 in cash and time certificates of deposit running from three to eighteen months, with interest thereon at 2 per cent, and when the difference in interest is considered, this would reduce the purchase price to $97 or $98 for a bond of $100.

"In disposing of bonds, municipalities are frequently prohibited from selling them 'at less than the par value thereof.' The words 'par value,' when so used, mean a value equal to the face of the bonds and accrued interest to date of sale. When the bonds draw interest from their date and are disposed of after their date, with accrued interest attached, their face or 'par value,' within the meaning of the statute, is the sum of the principal and the accrued interest. Persons purchasing the bonds from the municipality are bound to take notice of the power of the municipality in this respect, and a sale of the bonds at less than par is absolutely void *inter partes,* as expressly prohibited by law. Neither party to the contract is bound thereby, and it cannot be the subject of a valid claim by either against the other." 2 Dillon Mun. Corp. (5 Ed.), sec. 895 (p. 1400).

In the leading case of *Dalafield v. State of Illinois,* 26 Wend., 132, the facts were strikingly similar to the facts in the case at bar, the act under which the bonds were issued stating that they 'should not be sold for less than their par value.' As a matter of fact, the purchaser agreed to pay par for the bonds, but was to do so by honoring and paying time drafts drawn by the State upon him, which time drafts bore no interest. In holding that this was a violation of the provision of the act above quoted, the New York Court said: "But the actual sale is made on terms which on the $300,000 sale gave the appellant an advantage of 130 days interest, and on the $283,000 sale of about ten months. I cannot, upon any understanding of the words, consider this as a sale at par value, any more than if there had been an undisguised discount at the same rate. . . . In giving these double advantages of credit and of gain of interest to Delafield, I can see that the agents exceeded their specific and limited authority, and in the latter case assumed a risk far beyond the bounds of ordinary prudence, since it was done on the personal credit of the purchaser alone, unaccompanied by any security." (Page 225.)

This will not prevent another sale of the bonds upon the terms of the statute.

We are therefore of opinion that the bonds are valid and that the taxes named in the statute can be legally levied and collected, and that the contract of sale is invalid.

The order and judgment of the Superior Court will be modified in accordance with this opinion.

Let the costs of the appeal be divided between the plaintiffs and the defendant.

Modified and affirmed.

BROWN, J., concurring: I think the exhaustive opinion of the Court by *Justice Allen* demonstrates conclusively that Article V, section 1, of the State Constitution, establishing an equation between property and poll tax and prescribing a limitation upon the latter, applies only to taxes levied for general purposes by the State and county governments, and does not apply to county taxes levied for a special purpose with the approval of the General Assembly.

It necessarily follows from this construction of the Constitution that the levying of special county taxes is within the sound discretion of the General Assembly, and may be levied upon property exclusively, or upon both poll and property, as is the case in the act under consideration.

In my opinion, this construction, which has been given to the Constitution by this Court in the several cases cited in the opinion, and by every General Assembly which has met in this State for the past forty years, is not only the natural meaning and purport of the instrument, but it is that construction which is absolutely essential to the maintenance of our system of county governments and to sustaining their good faith and credit. It has been held that if the poll tax is limited to $2 the property tax must be likewise limited to $2 on $300 worth of property. *R. R. v. Holden,* 63 N. C., 427.

By the express requirement of the Constitution, the poll and property tax are linked together and cannot be divorced, and the former is to be measured by the latter. This is expressly stated by *Chief Justice Clark* in his opinion in *Russell v. Ayer,* 120 N. C., 191, who adds: "This provision was inserted in the Constitution of 1868 as a guarantee to the property holders of the State that they would not be oppressed by inordinate taxes laid by representatives elected by newly enfranchised blacks, who had small property to be taxed and whose representatives might otherwise be tempted to levy excessive taxes on property."

If the limit of taxation is $2 on the poll, the same limit must apply to $300 worth of property. If this applies to special taxes for county purposes, as well as general taxes, there can be no special taxes, and it was idle to provide for them, for the General State and county taxes always exhaust the limit. The members of the Convention evidently foresaw that counties must of necessity need large sums of money for the construction of necessary public improvements, such as courthouses, jails, bridges, and roads, and they provided the special taxes to meet such emergencies, and evidently did not intend that the equation and limitation should apply to them, but that the manner of their levy should be left to the sound discretion of the representatives elected by the people to the General Assembly. That is the reason they are termed *"special"* as distinguished from *general* taxes.

Relying upon this construction of the Constitution, two-thirds or more of the counties of the State, by legislative authority, have been compelled to levy special taxes in order to pay their current expenses. They have also borrowed millions of dollars with which they have erected courthouses and jails, constructed roads and bridges, and otherwise added to the material wealth and prosperity of their citizens. Purchasers of these bonds in every part of the United States have relied upon the decisions of this Court to protect their investments. If we repudiate this well settled legislative and judicial construction and strike down these special taxes, the counties of the State will have to "go out of business"; their credit will be ruined and that of the State itself seriously impaired. We may well pause before reaching a conclusion that will inevitably produce such disastrous results.

The case of *R. R. v. Comrs.*, 148 N. C., 220, is relied on to support the contention of the plaintiff. There may be some expressions in the opinion that, taken by themselves, have such tendency, but they are mere *dicta*. The question decided in this case was not presented, because in that case no poll tax was levied—only a property tax that exceeded the limitation of $2 on $300 worth of property. The statute then under consideration, instead of authorizing a poll tax, forbade it in express terms. The only question decided in that case is that the equation of taxation need not be observed in levying taxes for special purposes—a legislative construction of the Constitution directly in accord with our decision in this case. If the equation need not be observed, why should the limitation? It is evident from the subsequent writings of *Judge Connor*, who wrote the opinion in *R. R. v. Comrs.*, that he fully concurs with the majority of this Court. In the Commentaries upon our Constitution he says: "It seems that the proportions and limitations here placed upon taxation apply in all cases of

State and county taxation, except provisions (1) for the public debt as it existed when the Constitution was adopted, (2) for casual deficits, insurrection and invasion, and (3) for *county taxation for special purposes.*" Connor and Cheshire on Constitution of North Carolina, page 258.

The case of *Perry v. Comrs.,* 148 N. C., 521, is cited by plaintiffs and strongly relied upon by defendants. In my judgment, it is a direct authority sustaining the opinion of the Court in the case under consideration. It decides that a quasi-municipal corporation may under Article VII, section 7, of the Constitution exceed the limitation on the poll and on property in levying taxes for a *"special"* purpose when the tax levy has legislative sanction. That section of the Constitution uses the words, "county, city, town, or other municipal corporation," and declares that a county is on a par with all other municipal corporations. If under that decision a municipal corporation may exceed the limitation on poll and property for a special purpose, why may not a county do so? I agreed to both of these decisions, and see no reason to change my opinion.

I emphatically deny that this Court is "striking out two provisions from the Constitution," or amending them. We are but following the construction placed on the Constitution by this Court nearly twenty years ago in *Herring v. Dixon,* 122 N. C., 420, and in *Tate v. Comrs.,* 122 N. C., 812, in which it was clearly and distinctly held by a unanimous Court that the limitation on the poll and property can be exceeded for a *special* purpose with the sanction of the Legislature, and that the construction of public roads is a special purpose. We are but following *Crocker v. Moore,* 140 N. C., 432, citing the above named cases, and holding that notwithstanding Article V, section 2, which appropriates the State and county poll tax to the purposes of education and support of the poor, a part of the poll tax may be applied to the construction of roads with the permission of the Legislature, as that section of the Constitution does not apply to a poll tax levied for such a "special" purpose. These precedents have been cited and approved by this Court in over a dozen cases cited in the annotated edition, 122 N. C., 815.

The opinions in the three cases above cited not only expressed the well considered judgment of a unanimous Court, but were written by as profound a jurist as *Chief Justice Clark.* Because their learned author has in recent years seen fit to change his personal views is no reason why those cases should be overruled. I prefer to follow the strong and convincing reasoning of his former opinions rather than his recent utterance. Judicial decisions should not be lightly set aside. They should be stable and not change with the ebb and flow of every tide.

The doctrine of *stare decisis* is especially applicable to those judgments of the Court that expound the Constitution and give a construction to it which has been acted upon by the State and its counties for many years. Such judgments should not be reversed except from overruling necessity.

It is surprising, in view of the decisions of this Court, that the majority should be gravely charged with an attempt to amend the State Constitution by judicial decision so as to divert a special poll tax from educational and charitable purposes to the construction of public roads. If the Constitution needed amending to accomplish that result, it has been done by the decisions of this Court in which four of its present members concurred.

In *Board of Education v. Comrs.,* decided in 1904, and concurred in by the *Chief Justice* and *Mr. Justice Walker,* it was decided in an opinion by *Mr. Justice Connor* that "Poll taxes collected under a special act of the General Assembly for highways can not be diverted to schools and the support of the poor."

In *Crocker v. Moore, supra,* decided in 1906, by a unanimous Court, four of whose members are still on it, it was held that "The objection to the constitutionality of the act of 1903, chapter 538, in that the act applies a part of the county capitation tax to the use of the public roads in violation of the Constitution, Article V, section 2, which appropriates the State and county poll tax to the purposes of education and support of the poor, cannot be sustained, as that provision applies to the levy of taxes for general, not special purposes."

If these decisions do not sustain the conclusion of the majority of this Court in this case, then the English language has failed of its purpose. It has been said that "consistency is a jewel," and also that it is the "hobgoblin of weak minds." I think that in the construction of organic law, consistency and stability are important judicial attributes tending greatly to the proper administration of the State Government.

It may be, as suggested, that political agitation will bring about an abolition of the poll tax entirely. That is not a matter for our consideration, and such threats have no effect on us. The wisdom of levying a poll tax is for the people themselves. Such tax has been levied in this State from time immemorial, and no one has stated the reasons for levying such tax stronger and more lucidly than the distinguished *Chief Justice* of this Court. *Russell v. Ayer, supra.*

There are thousands of wage earners, artisans, and others in this State who earn fair salaries and wages who have seen fit to acquire but little taxable property. Those persons get the full benefit of the educational facilities of the State and the protection and benefits of

our Government. All that many of them pay for these blessings is a
small poll tax of a few dollars per annum. Those persons are not
crying out against such taxation. They are not raising a hue and cry
against the poll tax. They have too much personal pride and self-
respect to desire the benefits of our Government for nothing, and are
more than willing to pay the small tax assessed against them for the
benefits they and their children receive.

It should be remembered that we have not decided that the General
Assembly must levy a poll, tax in excess of $2 for *special* purposes.
We simply held that under the previous decisions of this Court the
General Assembly has the constitutional power to do so in certain in-
stances if it sees fit. It need never levy a poll tax in excess of $2.

It may confine special county taxation to property exclusively. It
is a matter within the sound discretion of the Representatives and
Senators who come directly every two years from the people. If they
can be trusted to levy taxes upon the property of those who elect them,
can they not also be trusted not to be oppressive in levying the tax upon
the poll? They are directly responsible to the people, and can be
trusted to carry out the will of their constituents.

In this case the poll tax was levied by the voters of Alexander County,
a large majority of whom are liable to poll tax. The same can be
said of practically all the counties of the State, with one or two excep-
tions, that have voted for special taxes for the construction of good
roads and other public improvements. The special poll tax has not
been forced on them by the General Assembly, but it has been levied
by the votes of those citizens who believe in the great benefits accruing
to their county from good roads and other public improvements.

I see no reason why this Court should deprive them of that right
which they have exercised continuously for nearly forty years. To do
so will effectually put a stop to all public improvements in this State.
It is very significant that the several actions that have come to this
Court involving the validity of the poll tax have not been brought by
those who pay the poll tax and but little else, but by property holders
who were endeavoring to keep down the taxes on their property by
pleading the equation between the property and poll tax.

We have all given this case that careful study and reflection its
importance deserves, and I believe that the conclusion reached by the
majority is not only in accord with the precedents, but is the construc-
tion the framers of the Constitution intended should be placed on it.
If I regarded this an open question, I should hold as I now do, for
where two constructions are permissible, I feel bound to adopt that
which in my judgment is absolutely essential to the material prosperity
and upbuilding of the State and to the maintenance of its credit.

CLARK, C. J., dissenting: The Constitution at Halifax in 1776 made no reference to the poll tax, and it was unknown in England, where it had been tried only in the very distant past, and, having caused two insurrections, had soon been repealed. Even in that country, which was then far more ruled by the classes than now, taxation of the poll was not tolerated.

In the Revised Statutes in 1835 the poll tax was 20 cents and was levied also upon slaves, who were not taxed *ad valorem*, as well as on whites. In the Revised Code of 1854 the poll tax was 40 cents, and it is current history that it was levied largely because slaves were not taxed according to their value as property.

When the Constitution of 1868 was adopted a poll tax was authorized up to $2, but it was restricted by two explicit provisions. Art. V, sec. 1, provided: "The State and county capitation tax combined shall *never* exceed $2 on the head." Another section, Art. V, sec. 2, provided: "The proceeds of the State and county capitation tax shall be applied to the purpose of education and the support of the poor, but in no one year shall more than 25 per cent thereof be appropriated to the latter purpose."

The Court has no more power than the Legislature to strike out those two provisions from the Constitution. They could not be made more explicit. The whole subject was thoroughly reviewed by this Court in an unanimous opinion, *R. R. v. Comrs.*, 148 N. C., 220, in which all the cases on the point were reviewed, and the Court held that only one of the previous cases, *Board of Education v. Comrs.*, was in conflict with the result then reached. The very able and exhaustive opinion, written by *Connor, J.* (now the distinguished Federal judge of the Eastern District of North Carolina), held that the wording of the Constitution, " 'The State and county capitation tax combined shall never exceed $2 on the head' is imperative and prohibits the levy of any tax upon the poll *for any purpose in excess of that sum;* that section 2 applies the poll tax to the purposes of education and the support of the poor and withdraws it from any other purpose," adding (p. 245): "This question cannot again arise."

This opinion was repeated in *R. R. v. Comrs.*, 148 N. C., 248, written by the same judge, and *Perry v. Comrs.*, 148 N. C., 521, by *Hoke, J.* These decisions have never since been questioned till now. Four of the judges who concurred in those opinions are still on the Bench. There is but one member of the Bench now who was not on the Court at that time, and if the change in personnel of one-fifth of the Court authorizes the reversal of these able and thoroughly considered opinions upon a grave constitutional question in accordance

with the express language of the Constitution, as all men may read it, then reliance can no longer be placed upon any opinion whatever, for the views of the Court, so liable to change, have become

"As variable as the shade
   By the light quivering aspen made."

If precedents are to govern, these last three opinions reviewing the whole subject are conclusive. If the Constitution itself is to control, its language, "The State and county capitation tax shall *never* exceed $2," and "The proceeds of the State and county capitation tax shall be applied to the purposes of education and the support of the poor," can admit of no other construction than the plain and explicit pledge therein given to the laborers and men of small means that they shall not be taxed for the mere privilege of breathing the air more than $2 per year, and that that sum shall be applied to no other purposes than "education and the support of the poor."

It is true that Article V, section 1, does provide that the capitation tax shall be equal to the tax on property valued at $300 in cash, but there is no provision that the tax on $300 worth of property shall never exceed $2, and hence the Court has repeatedly held that this equation only extends and is to be observed up to $2, and, therefore, when the tax on property exceeds $2 the equation ceases, because the poll tax "can *never* exceed $2."

This does not invalidate any bonds heretofore issued in which a capitation tax has been authorized, because the purchasers of such bonds are fixed with notice that the State Constitution forbids the levy of a capitation tax in excess of $2, and that such tax can only be applied to education and the poor. The holders of such bonds have the right to have the levy of taxes upon property for the payment of their bonds, but they have no interest in the poll tax, which cannot be applied for such purpose; and whenever the aggregate poll tax provided for in all the statutes authorizing a tax levy for bonds or other purposes reaches $2 the board of commissioners must stop. They cannot go beyond that figure.

The language of the Constitution is too plain to admit of discussion, and it is of no value to criticise or compare previous decisions of this Court. The last three decisions quoted from 148 N. C. above are equally conclusive. The unanimous Court gave to the public the pledge, as explicit as that in the Constitution, that the poll tax should never exceed $2, and said, four of the present Bench concurring: "This question can never again arise."

In *R. R. v. Comrs. Judge Connor* quotes Judge Cooley: "Capitation taxes are not a common resort in modern times, and only in a few cases could they be just or politic," and cites from other States showing

that only a few States levy a poll tax. In fact, in 36 States, as in England, no poll tax at all is levied, and in the other 12 it cannot exceed $1, and that is applied to the public schools.

In California, one of the States which allowed this small poll tax, an amendment to the Constitution, striking it out, was adopted last year by 125,000 majority. In our State the county and municipal poll tax combined has frequently reached the oppressive figure of $6, $7, and even $8. And, as stated in *R. R. v. Comrs.,* 148 N. C., 253, "This is criticised by Hollander on State Taxation, 104, who points out that in this State, in which 60 per cent of the taxes are paid by persons owning less than $500, the result is that the small taxpayer, if he pays a poll tax, also pays nearly double the rate of the larger tax-payers."

In our State, also, the amendment ratified in August, 1900, provides that every person "before he shall be entitled to vote shall have paid, on or before the first day of May of the year in which he proposes to vote, his poll tax for the previous year." As *Judge Connor* forcibly said in *R. R. v. Comrs.,* 148 N. C., at p. 242, "It is a strange anomaly to say that while the right to vote is restricted by the payment of a poll tax which 'shall never exceed $2,' the voter may be disfranchised for failure to pay a poll tax the amount of which is left to the discretion of the General Assembly, the Constitution thus guaranteeing to every citizen otherwise qualified the right to vote by paying a poll tax of $2, and by construction giving the General Assembly the power to increase it to any amount they may deem proper."

It is true that formerly the roads were worked by conscription of labor. This was a most unjust provision, enacted by the influence of the landowning class, at a time when no one could vote for State Senators unless he owned 50 acres of land. The property owners who used wheels over the roads paid very little of the cost of making the roads, while those who only walked by the side of them worked the roads for those who used them.

The inefficiency as well as the injustice of this system, in France, where they were called *Corvées,* was one of the chief causes of the great French Revolution. In this State the progress of civilization and the impossibility of getting effective roads by that system, as well as a sense of its inherent injustice, has caused the almost universal adoption of the present method of working the roads by taxation; but this does not justify the violation of the pledge in the Constitution by increasing the burden on the head of the laborer beyond the $2 limit pledged by the Constitution. Under the guise of working the roads by taxation this is placing part of the cost of working the roads back on the laborer by taxing his head in excess of the constitutional limitation.

The Constitution cannot be misunderstood when it pledged the laborer and the man of small means that no tax should be laid on his head in excess of $2, and that this should be applied solely to education and the poor.

The tendency of the age is towards a more equitable levy of taxation upon the superfluity of the wealthy, and therefore Congress has levied a graduated income tax, exempting those under $4,000 and ranging from 1 per cent on that sum to 13 per cent on larger amounts. In like manner there is a graduated tax on inheritances, exempting small estates. The State has also adopted the same policy of graduated taxation upon incomes and inheritances. The sense of justice and the political economy of this age require a more equitable distribution of the public burdens by putting the heavier tax on those most able to bear it instead of the reverse, as is the case under an unlimited poll tax.

The practical effect of this decision is to strike out of the Constitution by a vote of 3 to 2 of the members of this Court the protection against excessive capitation tax and thus to leave it without any limitation whatever. The effect will be necessarily to precipitate, from a public sense of justice, an agitation, as in California, to strike out the capitation tax entirely. No people can stand an unlimited poll tax, and will not tolerate it when there is a solemn constitutional pledge and previous unanimous decisions of this Court that the poll tax can never exceed $2, and shall be applied to no other purpose than education and the poor. The holders of these bonds are entitled to have their principal and interest paid by a levy on the property of the county, but they cannot tax the polls of those who create its wealth and who should be protected, according to the Constitution, from paying any poll tax for other purposes, and in any larger amount than therein specified.

The General Assembly must be construed, to have understood the Constitution and to have intended to conform to it. In *Jones v. Comrs.*, 107 N. C., 248, it was held that "The equation and limitation of taxation apply only to taxes levied for the ordinary purposes of State and county." This has been sustained ever since. It means that the equation must be observed up to the $2 limitation for ordinary purposes, but when a tax is levied for a special purpose it can exceed the $2 limitation on property, but, in the language of the Constitution, "The State and county capitation tax can never exceed $2"—that is, *for no purpose and on no occasion*. There is no such limitation as to the taxation of property. The bondholders have no interest in the poll tax exceeding $2, for in no event can any part of the capitation tax be applied to any other purpose than education and the poor. The Constitution forbids it.

Section 4 of the act before us, providing for "a *special tax* on all polls, real estate and personal property . . . always observing the constitutional equation between the taxes on the property and the taxes on the poll," is a constitutional act, but it must be construed, within the terms of the Constitution, to mean that all the taxes levied on the polls, including that provided in this act, shall not exceed $2 on the poll, nor be applied to any other purpose than education and the poor. Thus construed, it conforms to the Constitution and to all our decisions as reviewed, and was so held by a unanimous Court in *R. R. v. Comrs.*, 148 N. C., 220; *R. R. v. Comrs., ib.,* 248; and *Perry v. Comrs., ib.,* 521.

The Constitution is so plain and explicit and all our authorities have been so clearly reviewed and summed up in those cases that it is simply a waste of time and a "threshing over of old straw" to go over and review them again. The plain letter of the Constitution is the guide by which we must go, and that cannot be changed by placing upon our precedents a different construction from what has been done in the three cases in which this matter has already been fully and carefully discussed and settled.

This Court is without authority to amend the Constitution by striking therefrom the guarantee given the toiling masses and men of small means, that the "State and county capitation tax shall never exceed $2," and that it shall be applied only "to education and the poor." If by ingenious argument it could be shown that any previous decisions have held that this can be done (but they have not), so much the worse for those decisions. The argument would merely show that judges are not always infallible, and sometimes make mistakes. It would not authorize us to amend the Constitution to conform to those decisions.

The public will feel slight interest in any argument claiming such precedents. But it will deeply concern them that faith should be kept with the masses to whom the constitutional pledge was given that the poll tax should be limited to $2 and applied only "to education and the poor." It will be a serious matter, by a strained construction placed on the Constitution by a bare majority of this Court, to repeal those provisions, thus making the poll tax subject to no limitation and applicable to all purposes, with the effect that those already sufficiently burdened with an undue share of taxation shall have their pro rata increased and themselves disfranchised if unable to pay an unlimited capitation tax.

As construed by this Court heretofore, the "equation" held only till the poll tax reached $2. As the tax on the poll could *"never* exceed $2," the equation necessarily then ceased, for thereafter taxation could be

laid only on property. *Jones v. Comrs.,* 107 N. C., 248, and numerous cases since.

Can a majority of this Court amend the Constitution? The Constitution guaranteed that the State and county poll tax "shall *never* exceed $2." As now amended by the vote of three judges, the Constitution must henceforth read: "There shall be no limit on the poll tax."

The Constitution as written by the Convention and adopted by the people reads, the poll tax "shall be applied to the purposes of education and the support of the poor." As now amended by a majority of the Court, it must henceforth read as if written: "The poll tax shall be applicable to any and all purposes." This is a complete reversal of both propositions, by judicial construction. As now amended, the poll tax being laid without limitation and applicable to any purpose, there was no purpose to be served by putting any reference to it in the Constitution.

This judicial construction, which by a bare majority of the Court now makes the poll tax unlimited and gives its proceeds to those bondholders, will likely bring about its abolition—especially as a slight change in another decision will disfranchise every voter who does not pay an unlimited poll tax for the benefit of bondholders.

In Hollander on State Taxation, 104, it is said: "The poll tax of North Carolina is clearly a regressive tax of a very heavy kind. It amounts frequently to doubling the rate on small property owners. Let us suppose, for instance, two property owners, one owning property worth $10,000, and another owning property worth $300. If we levy on each a property tax of 1 2/3 per cent (an average municipal tax in North Carolina) and a poll tax of $5, this amounts to taxing the richer man at a rate slightly above 1 2/3 per cent, while the poorer man has to pay $10 tax, or at the rate of 3 1/3 per cent. If a poor man has no property, and thus escapes the payment of the extra poll tax, the very existence of this tax is an inducement to him never to acquire any property, since from his first savings the State, county, and city take away as much as the savings bank would pay him if he had $300. If he only saves $100, they take away far more than such bank would pay him. That this is a real and an important consideration is revealed by statistics from Wake County given by the Auditor in his report for 1896. Over 60 per cent of the taxpayers of this county pay on less than $500 of real and personal property, and the Auditor estimates that 80 per cent of the taxpayers of the entire State pay on less than $500 worth of property. On such persons the poll tax weighs heavily. The richer man does not feel it; the man with no property largely escapes it; but upon the small property owner it hangs as an

incubus. It is not a tax proportioned to ability. It is not even, according to the theory of the general property tax, proportioned to wealth. In what manner its advocates would justify the retention of the tax is not clear."

If the burden on this class is to be increased by making the poll tax unlimited, and applying it for the benefit of bondholders, such change should be made by a constitutional amendment and a clear expression by the people at the ballot box, and not by judicial construction in a divided Court.

The Constitution in a separate section, Article V, section 2, provides that the poll tax shall be applied solely "for the purposes of education and the poor." This is in no wise connected with the equation or limitation, and, therefore, when the poll tax is levied, whether within or beyond the limitation, no bondholder has any interest in the poll tax; whether its assessment in this act be stricken out or not by its limitation to $2, the bondholder can in neither event have any interest in its proceeds, and failure to collect it because in excess of $2 in no wise concerns him. It follows that the bonds issued for any valid purpose are valid, though the poll tax in excess of $2, out of respect for the Constitution, is not collected.

The three cases in 148 N. C., above cited, the last on the subject, reviewed all the authorities, including Herring v. Dixon, Tate v. Comrs., and by a unanimous Court it was held that no case (except one) conflicted with the doctrine therein again laid down, that the poll tax could not exceed $2, and should be applied only for education and the poor, and asserted that this question "cannot again arise."

If the poll tax is unlimited, why did the Constitution provide that it should "never exceed $2"? If the poll tax can be levied and collected to an unlimited extent for the benefit of bondholders, why did the Constitution pledge that it should be applied only for education and the poor, and why was the whole subject reviewed and the constitutional provision sustained by a unanimous Court in the three latest cases on the subject?

The poll-tax payer was not "the forgotten man" when the Constitution was enacted and submitted for adoption.

WALKER, J., dissenting: Concurring in so much of the Court's opinion as annuls the contract between the defendants and Spitzer & Co., I am compelled to dissent from so much of the decision by the Court as holds that the bonds are valid, and especially from that part which affirms the power in the State and county to levy a poll tax exceeding $2, even with the special approval of the General Assembly,

to pay the bonds and interest. The poll tax, in my opinion, can never exceed $2 for any purpose, ordinary, general, or special, and the proceeds of it can be applied to no purpose other than education and the support of the poor. I do not deem it necessary to discuss any feature of the case except the one relating to the levy of the poll tax, in view of the admission in the opinion of the Court, which receives my full concurrence, that if the second of the "three contentions, as to the construction of section 1 of Article V," is adopted, the statute under which it is proposed to issue these bonds is ineffectual (as to this tax) "in its entirety," because, after directing a levy of a poll and property tax, it links the two together and makes it impossible to separate them, by using the words "always observing the constitutional equation between the taxes on the property and the taxes on the poll." The second of these three contentions is thus stated in the opinion: "That the limitation on the poll tax is absolute and can never be exceeded for any purpose, but that the limitation upon property tax may be exceeded for a special purpose with the approval of the General Assembly." My purpose will, therefore, be to maintain that the second of said contentions, so far as the poll tax is concerned, should be adopted now, as it has been before, and this can be done, in my judgment, both easily and successfully, by a recurrence to the plain and emphatic language of the Constitution and the recent decisions of this Court.

Whatever may be gathered, if anything stable or reliable, from the decisions of this Court prior to 1908, it is very certain that in the year named we passed upon the very question after full consideration and an elaborate discussion of it by *Justice Connor* in *Southern Railway Co. v. Board of Commissioners of Mecklenburg County,* 148 N. C., 220. The personnel of the Court was the same *then* as now, with one exception, and we *all* surely thought at that time that the question was ripe for a decision, or if any one was of a contrary opinion he gave no expression to it. If it was not then properly before us, we consumed uselessly a great deal of valuable time and labor in the discussion of a moot question.

In order to show clearly that the question of the maximum of the poll tax was involved in that case (148 N. C., 220), we need only to say that the opinion of the Court shows manifestly that it was considered and treated not only as a question in the case, but as the main question presented by the record, and that it was, in fact, involved, as appears by this language of the Court at p. 245: "We decide that the commissioners of Mecklenburg County acted in accordance with the

statute in failing to levy more than $2 on the poll, and that the statute is a valid exercise of power by the Legislature. This conclusion renders it unnecessary to discuss the much vexed question as to what is or what is not a special purpose within the meaning of section 6 of Article V." The question was whether the commissioners could levy more than $2 on the poll, or the Legislature could authorize them to do so. It further appears from the following language of the Court, if more is required: "We are brought to the conclusion that the act of 1905, ch. 840, is in accordance with the correct interpretation of the Constitution; that the last clause in section 1, Article V, 'and the State and county capitation tax combined shall never exceed $2 on the head,' is imperative and prohibits the levy of any tax upon the poll *for any purpose* in excess of that sum; that section 2 applies the poll tax to the purposes of education and the support of the poor, and that this language withdraws it for any other purpose. We are not inadvertent to the fact that the conclusion in the last respect is not in harmony with what was said in *Board of Education v. Board of Commissioners*, 137 N. C., 310. As we have said, in that case the tax had been collected, and the only question was which of two contradictory provisions should control. Under the construction which we give Article V, the question cannot again arise." We should not overlook the fact that in the outset of the opinion in *R. R. v. Comrs.* a carefully formed doubt is expressed as to "whether the question (now) raised upon the record has been decided by this Court," and this is the conclusion: "It is evident that the question is regarded as an open one, and must be settled upon some permanent basis." The Court then proceeded to settle, finally and forever, this vexed question of taxation which for so long had been the subject of variant individual opinions expressed by the judges. The Court not only held that the question as to the constitutional limit of the poll tax was raised in that case, but it was actually presented, as one point was whether the Legislature, in giving its assent to the levy, was bound to require the equation to be observed, so that a poll tax would be levied with the property tax, even though no poll tax in the county had reached the limit of $2, the railroad company contending that the Legislature was compelled to do so or discriminate against it as a taxpayer. The Court decided that it was not required, as the poll tax limit could not be exceeded. It cannot be successfully contended that the question was not directly involved in *R. R. v. Commissioners of Buncombe,* heard at the same term, 148 N. C., 248. The language of the Court is too plain for misunderstanding, and conclusively shows that it was. It is there said: "The defendant board of commission-

ers, at the time of levying said taxes, were advised and believed that they had no right, under the Constitution, Art. V, sec. 1, and all the acts mentioned in the complaint, to (levy) a capitation tax in excess of $2. His Honor, being of the opinion that the levy of the several taxes set out on the property, without the levy of a corresponding tax upon taxable polls in Buncombe County, was illegal and void, and that the taxes charged to the plaintiff are for that reason illegal, made an order continuing the injunction to the hearing. Defendant board of commissioners appealed." Again it was said: "The question, therefore, upon which the plaintiff's right to maintain its action depends is whether section 1, Article V, makes it imperative upon the Legislature to impose a poll tax in excess of $2, when a property tax in excess of the same amount is levied upon property for any and all purposes, or whether the words, 'that the State and county capitation tax combined shall never exceed $2 on the head,' prohibit a poll tax in excess of that sum for any purpose. We have given the subject our best thought and investigation in the *Mecklenburg case,* and reached the conclusion therein announced." After commenting on the excessive poll tax already levied, the Court further said: "This is significant of the operation of the Constitution, when the imperative command that the capitation tax shall never exceed $2 on the head is disregarded." In that case the decision was placed on what the Court held had been presented, fully discussed, and finally adjudicated in the *Mecklenburg case, supra,* that the poll tax could *never* exceed $2 for any purpose. In the *Buncombe case* the Superior Court had held that the poll tax must be levied, even if it did exceed the limit and was for a special purpose, and that ruling was reversed, for the only reason, as the Court said, that the poll tax could not go beyond the constitutional limit of $2. Again, in *Perry v. Comrs.,* 148 N. C., 528, *Justice Connor,* who wrote the opinion in *R. R. v. Comrs., supra,* said in a concurring opinion: "My investigation, however, in *R. R. v. Comrs., ante,* 220, impressed upon my mind the conviction that the framers of the Constitution of 1868 did not anticipate that any poll tax should be levied for other than 'State and county purposes,' and for those it should not exceed $2, and should be applied only to the purposes of education and the support of the poor." And the Court itself, through *Justice Hoke,* was very pronounced in the expression of its opinion as to what was presented and decided in *R. R. v. Comrs., supra.* There is no uncertain sound or discordant note in what I am about to quote from *Perry's case,* but it rings clear and true, and leaves no peg upon which to hang a doubt as to what was meant. I will italicize the important words. Here it is, as taken literally from the

opinion of *Justice Hoke* in *Perry v. Comrs.,* 148 N. C., at pp. 522, 523:

"While the question presented in this appeal is one of commanding interest and far-reaching importance to the entire State, its correct solution, in our opinion, is readily deducible from decisions of this Court heretofore made and which bear upon the subject with more or less directness. Article V, section 1, of the Constitution, after direction that the General Assembly shall levy a capitation tax on every male inhabitant of the State over 21 and under 50 years of age, and that this poll tax on each shall be equal to the tax on property valued at $300, provides that the State and county capitation tax combined shall never exceed $2 on the head. Section 2 of the article provides that the State and county capitation tax shall be applied to the purposes of education and the support of the poor, and that not more than 25 per cent of such tax in any one year shall be appropriated to the support of the poor. Section 6 of the same article provides that the taxes levied by the board of commissioners for county purposes shall be levied in like manner as the State taxes, and shall never exceed the double of the State tax, except for a special purpose and with the special approval of the General Assembly. *Construing these sections,* the Supreme Court, at the last term, in *Railway v. Board of Commissioners of Mecklenburg County* and *Railway v. Board of Commissioners of Buncombe County,* held that this restriction on the amount of the poll tax contained in section 1 shall be given the *significance* which its terms *clearly* import—that the State and county capitation tax combined shall never exceed $2 on the head, and that this limit fixed on the poll tax for the purposes indicated, that is, for the State and county, shall be always observed, notwithstanding that a given tax may be for some special purpose and with the special approval of the General Assembly."

What does all this mean, if not that the question as to the limitation of the poll tax for *all* purposes was presented in *R. R. v. Comrs.,* and decided?

Surely, it was not intended to say that the Court by a mere dictum had "construed those sections" (Art. V, secs. 1, 2, and 6) and "held" that the amount of the poll tax cannot in any case exceed $2, as the learned justice said that is the *"significance* which its terms clearly import." I am not referring to these as the views of only one justice, but as those of all of them, reinforced by a separate concurring opinion of *Justice Connor,* who spoke for the Court in *R. R. v. Comrs.,* as to what was then before us by the concurrent testimony of all the judges, and as to what was decided, and intended to be written into

his opinion, which was afterwwards unanimously accepted and approved by this Court. The personnel of the Court when *Perry's case* was decided was the same as when *R. R. v. Comrs.* was decided, and as it is now, with one exception as heretofore noted.

So far I have attempted to show, and, I think, have shown, by the words of other judges with whom I concurred, that this question as to the maximum limit of the poll tax had been before the Court recently in the cases cited, and had been decided. It was decided in *Perry's case,* for the general question of taxation was there open for discussion, and especially the question as to the extent of the power to tax both in State, counties, and municipalities. What was said by *Justice Hoke* was clearly pertinent to the question in hand, and was a clear-cut decision of it.

In *R. R. v. Schutte,* 103 U. S., 118 (26 L. Ed., 336), the Court said on the doctrine of precedents: "Although the bill in the case was finally dismissed because it was not proved that any of the State bonds had been sold, the decision was in no such sense a dictum. It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter. Here the precise question was properly presented, fully argued, and elaborately considered in the opinion. The decision on this question was as much part of the judgment of the Court as was that on any other of the several matters on which the case as a whole depended." *R. R. v. R. R.,* 199 U. S., 160.

This brings me to the important question as to what was decided in those cases, and in regard to this there can be no reasonable doubt, if the words are given their plain and unmistakable meaning. In *R. R. v. Comrs., supra,* the Court says at pp. 240 and 241: "The suggestion that after that limit ($2 on $300 worth of property) was passed, the amount of poll tax is left to the uncontrolled discretion of the General Assembly, we do not think finds support in the language of the Constitution, but is excluded by the positive command that 'the State and county tax combined shall never exceed $2 on the head,' and the further provision limiting its application to the purposes of education and the support of the poor." Reviewing the two different constructions of the tax provisions in the Constitution, the Court then proceeds as follows: "If we adopt the other construction we confine the poll tax 'for all purposes' to $2, as provided by the Constitution, and apply it to the purposes directed—education and the support of the poor—and 'to no other purpose.' It makes the capitation tax uniform throughout the State, thus restoring the principle incorporated in the

Constitution of 1776 as amended in 1835. It conforms to the express declaration of the people, as expressed in the amendment ratified in August, 1900, which provides that 'every person presenting himself for registration shall pay, and before he shall be entitled to vote he shall have paid, on or before the first day of May of the year in which he proposes to vote, his poll tax for the previous year, as prescribed by Article V, section 1, of the Constitution.' It is a strange anomaly to say that, while the right to vote is restricted by the payment of a poll tax which 'shall never exceed $2,' the voter may be disfranchised for failure to pay a poll tax the amount of which is left to the discretion of the General Assembly, the Constitution thus guaranteeing to every citizen otherwise qualified the right to vote by paying a poll tax of $2, and, by construction, giving the General Assembly the power to increase it to any amount they may deem proper. Whatever may have been the construction prior to 1 January, 1901, we find in this amendment, which then became a part of the Constitution by the vote of the people, a construction which gives full force and effect to the provision that the State and county capitation tax combined shall never exceed $2, as prescribed in Article V, section 1." And finally the Court decided that Article V, section 1, is mandatory in the prohibition of any poll tax for any purpose whatsoever beyond $2, and that the proceeds of the tax, when levied and collected, must be applied to the specific purposes designated in section 2, and to no other.

How the Court could have expressed itself with less ambiguity, I am at a loss to conceive. There is but one meaning that can be given to such plain and unmistakable language, namely, that $2 is the *ne plus ultra* of poll taxation, as clearly indicated in the Constitution by the use of the word "never," which is the universal adverb of negation. But, as we have shown, when discussing another branch of the subject, the Court afterwards deliberately construed the opinion in *R. R. v. Comrs.,* if we may speak of something which is perfectly clear as having been construed—and thus stated its view of that case: "It was *held* that this restriction on the amount of the poll tax contained in section 1 shall be given the significance which its terms *clearly* import—that the State and county capitation tax combined shall *never* exceed $2 on the head, and that this limit is fixed on the poll tax for the purposes indicated—that is, for the State and county —shall be always observed, notwithstanding that a given tax may be imposed for some special purpose and with the special approval of the General Assembly." Summing up the matter, we find this to have been held in *R. R. v. Comrs.,* 148 N. C., 220:

1. That the question had not been decided before, but was then an

open one, ready to receive an authoritative consideration and final settlement of it upon a permanent basis.

2. That the State and county poll tax can never for any purposes, or for all purposes, exceed $2.

3. That the poll tax must always be applied to the purposes of education and the support of the poor.

That decision, in respect to the poll tax, was unanimous, with four of the justices now sitting in the Court. The question was involved in the case, because the Court said it was, and was at great pains to decide, it being one of great importance, and the learned justice who wrote the opinion reviewed all the pertinent authorities at some length, because the question was in the case for decision, and after unanswerable argument the Court arrived at the conclusions which I have just stated, and it was then said that the question was finally closed and could not arise again. Could language be more clear, direct, and emphatic than it was in that case, and in the subsequent case of *Perry v. Comrs.?*

It is unnecessary to discuss previous cases, as it is the last utterance of the Court that counts, and gives the binding rule of action. If other rulings have been made of a character to justify reliance upon them as settling the law, and individuals have entered into contracts because of them, the latter may be valid under another principle; but so far as the present case is concerned, where no such thing can possibly have occurred and no vested right has been acquired, or other right which is under the protection of the Federal or State Constitution, and as the transaction is still *in fieri,* no sound reason can be advanced for our not being controlled by the last decisions, even if it be conceded that there are others of prior date to the contrary. The last word in such a case is, and should be, the prevailing one. There may have been a variety of opinions expressed or intimated in former cases, many if not all of which were dicta, in the true sense of that word; but whether so or not, those cases were reviewed carefully and minutely by this Court in *R. R. v. Comrs., supra,* and held not to conflict with the decision in that case, as it was stated by the Court that the question had not been closed, but was still open for debate and final decision, and the Court then proceeded to establish finally the true rule and to foreclose the controversy so that it cannot arise again.

The Court in that case did not limit itself to a discussion of the question as to how much poll tax could be levied for what has been called "ordinary expenses," but the opinion took a much broader sweep, and resulted in a *decision* as to what was the extreme limit of the poll tax for all purposes—"ordinary" and "special"—and the con-

clusion was that no greater sum than $2 could be levied for the two combined, or for any and all purposes, that being the only permissible meaning of the words of Article V, section 1, "the State and county capitation tax combined shall never exceed $2 on the head." The framers of the Constitution used the most intensive and at the same time extensive word within the English vocabulary in order to set an impassable limit to the poll tax, which would apply to all cases of taxation, and the term, "shall *never* exceed $2," allows of no exception, but is as broadly inclusive as any words could possibly be. The section says that the *State* and *county* tax combined shall never exceed $2. Is a tax any less a county tax because it is levied for a special purpose? Is not a tax for road purposes of any kind a county tax? How, then, could any term employed to express the will of the people in forming their organic law be more all-embracing? Besides, there is no authority to be found in any other article or section of the Constitution for levying a poll tax, except in section 1 of Article V. There is no mention of a poll tax in section 6 of that article or elsewhere, except in section 2, Article V, which provides how the proceeds of the poll tax shall be applied; and this answers the suggestion that the amendment of 1900 (Const., Art. VI, sec. 4), prescribing the qualification of voters, refers only to the payment of the poll tax provided for in Article V, section 1. The latter section is the only one which authorizes any poll tax for State and county purposes of whatever kind, and therefore the reference to it embraces the entire range of taxation on the poll for those purposes. The quotation in the opinion of the Court from *Perry v. Comrs.* with reference to this matter does not militate against this view, but rather supports it. The learned justice who wrote the opinion was referring altogether to taxation by a school district and not by a county, and when he mentions the State and county poll tax authorized by Article V, section 1, he says, as he had said before in the same opinion, "This poll tax, as we have seen, can never exceed $2." *Justice Connor* also adopted this view for the Court in *R. R. v. Comrs., supra,* and at the risk of some repetition, but in order to make the point perfectly clear, I will again quote that part of his language relating to this feature of the case: "It is a strange anomaly to say that, while the right to vote is restricted by the payment of a poll tax, which 'shall never exceed $2,' the voter may be disfranchised for failure to pay a poll tax the amount of which is left to the discretion of the General Assembly, the Constitution thus guaranteeing to every citizen otherwise qualified the right to vote by paying a poll tax of $2, and, by construction, giving the General Assembly the power to increase it to any amount they may

deem proper. Whatever may have been the construction prior to 1 January, 1901, we find in this amendment, which then became a part of the Constitution by the vote of the people, a construction which gives full force and effect to the provision that the State and county capitation tax combined shall never exceed $2, as prescribed in Article V, section 1." This conflicts with the view of the Court in this case upon the subject. Article V, section 1, established the ratio of taxation between poll and property, and section 6, the ratio between the State and the county tax, but all authority to levy the poll tax is derived from Article V, section 1, and its maximum is thereby fixed at $2.

Nothing can be gained for the argument of the Court by a reference to Article VII, section 7. That section does not confer any power to tax upon counties, for they already had the power under Article V; but it merely restricts the power to tax, so as to require a vote of the people where the proposed tax is not for necessary expenses. It is not an enabling but a disabling clause; not creative, but clearly restrictive. Its words are those of prohibition instead of authorization, at least as to counties, who already had been invested with the power of taxation. Why give it to them again, if they already had it? This Court has always regarded that section as giving no new or additional power, but as curbing that already given to counties, and this our decisions will show. Municipal corporations, such as cities, towns, school districts, etc., have, with respect to their power of taxation, been placed on a different basis from the State and its counties, as our decisions will show.

If taxes have been levied in the past, beginning in 1868-9, in violation of the plain words of the Constitution, it is no good reason for changing its meaning by judicial construction to meet the exigencies of the hour.

Judge Cooley, the eminent author and expounder, in his treatise on Constitutional Limitations (7 Ed.), at p. 75, says: "The Constitution of the State is higher in authority than any law, direction, or order made by any body or any officer assuming to act under it, since such body or officer must exercise a delegated authority, and one that must necessarily be subservient to the instrument by which the delegation is made. In any case of conflict the fundamental law must govern, and the act in conflict with it must be treated as of no legal validity. But no mode has yet been devised by which these questions of conflict are to be discussed and settled as abstract questions, and their determination is necessary or practicable only when public or private rights would be affected thereby. They then become the subject of legal

controversy; and legal controversies must be settled by the courts. The courts have thus devolved upon them the duty to pass upon the constitutional validity, sometimes of legislative and sometimes of executive acts. And as judicial tribunals have authority not only to judge but also to enforce their judgments, the result of a decision against the constitutionality of a legislative or executive act will be to render it invalid through the enforcement of the paramount law in the controversy which has raised the question." If we give full rein to every other department of the Government in the construction of the Constitution, we would soon be confronted by the very evil which it was adopted to prevent. While we will treat with proper deference and consideration any established departmental practice or usage, as perhaps indicating, by the impression made upon those who have followed it, what the Constitution means, where the custom has been continued throughout a series of many years, we are not bound by it, and, as Judge Cooley says, the courts must, at last, determine what that meaning is as expressed therein. The Court cannot abdicate its right to construe the Constitution, or assign it to any one else. It may be that in the enormous growth, progress, and development of the State we may find a potent reason for enlarging the limit of taxation adopted in 1868. This can be done though, not by us, whose province is to interpret only what has been written, but by one of the two methods prescribed by the Constitution itself, which would require the assent of the people. (Art. XIII.)

Something has been said about the advantage to the citizen, under the statute now being construed, in the new system of repairing the roads over the old; but the question involved here is much broader, and more far-reaching in its results, than is anything contained in the statute under consideration. It concerns the general power of the counties to tax the poll, with the consent of the Legislature, without any limit and for any special purpose, and is not restricted to a poll tax of 35 cents and a property tax of $1.05, which are the limits fixed by this statute. Under the Constitution an unlimited power of taxation was not intended to reside anywhere. The framers of the Constitution could no more estimate what rate of taxation would be required for the "ordinary" usual or "everyday" expenses of a county than they could for its other expenses. Some counties would require more than others, and therefore one rate was fixed for all, which was supposed, at the time, to be sufficient for the government of the counties, if economically administered. If they miscalculated, we are not at liberty to correct the error.

My conclusion is that the poll tax provided for in this statute is not authorized by the Constitution, and, if it is, that the proceeds thereof

cannot be paid on the bonds, or the interest, but should be applied, as directed by the Constitution, Art. V, sec. 2, to the purposes of education and the support of the poor. This being so, the statute in question is invalid, upon the principle stated in the majority opinion, that the statute must stand or fall in its entirety, because after directing a levy of a poll tax and a property tax, it links the two together in such a manner as to make them indissoluble, by providing that the constitutional equation between the two kinds of taxes shall always be observed. It is impossible for me to see why this is not the logical and inevitable result, if my position is correct, that the levy of the poll tax is void. This invalidates the entire statute, as the one tax cannot exist without the other, but both must coexist; being united as it were by an inseverable ligament. We applied the same principle most recently in *Keith v. Lockhart,* 171 N. C., 451. It was there said by *Justice Hoke* for a unanimous Court: "It is insisted for defendant that only the proviso being unconstitutional, this can be eliminated and the statute authorizing a special tax upheld. It is the recognized principle that 'Where a part of the statute is unconstitutional, but the remainder is valid, the parts will be separated, if possible, and that which is constitutional will be sustained.' In Black on Constitutional Law the rule is said to be: 'If the invalid portions can be separated from the rest, and, if after their excision there remains a complete, intelligible, and valid statute capable of being executed, and conforming to the general purpose and intent of the Legislature as shown in the act, the same will not be adjudged unconstitutional in toto, but sustained to that extent.' The position, however, is not allowed to prevail when the parts of the statute are so connected and dependent, the one upon the other, that to eliminate one will work substantial change to the portion which remains. Thus, in Black's work the author further says, page 63: 'And if the unconstitutional clause cannot be rejected without causing the statute to enact what the Legislature did not intend, the whole statute must fall.' Speaking to the same subject in the first of the Employer's Liability Cases, 207 U. S., pp. 463-501, the present *Chief Justice White* said: 'Equally clear is it, generally speaking, that when a statute contains provisions which are constitutional and others which are not, effect must be given to the legal provisions by separating them from the illegal. But this applies only to a case where the provisions are separable and not dependent one upon the other, and does not support the contention that what is indivisible may be divided. Moreover, even in a case where legal provisions may be severed in order to save, the rule applies only when it is plain that the Legislature would have enacted the legislation with the unconstitutional provisions eliminated. Citing *Illinois Central R. R. v. McKenonill,* 203 U. S., 514.'"

Another reason is that the tax scheme in this statute is and was intended to be an entire and indivisible one, and if any essential part of it is stricken from it, and the remainder enforced, it would result in doing something which was never contemplated, or authorized to be done, and, therefore, lack legislative sanction. Having reached the conclusion that the statute in its present form is void, I need not discuss the other phases of the case, as the one reason assigned for my view is all-sufficient to sustain it, if I am right in the conviction that the poll tax is limited by the Constitution, for all purposes, to $2, or, in the language of the instrument itself, can *never* exceed that amount. *Justice Rodman* thought that the poll and property tax were so proportioned that each class of taxpayers might exercise a restraint upon the other, and for this reason they were inseparably linked together. *R. R. v. Holden*, 63 N. C., 410. And the same was said in *Russell v. Ayer*, 120 N. C., 180. *Justice Clark* said very truly that the poll and property tax, as fixed by Article V, section 1, are standards for each other, whatever the poll is, placing a limit on the property tax, and the property tax creating the equation between the two. Under this adjustment the property tax on $100 worth of property could not exceed one-third of the poll tax, and the entire poll tax must be equal to and never exceed three times the property tax on a like amount of property. This was supposed to fairly apportion the burden on these two subjects of taxation—polls and property; and out of this adjustment there resulted a balancing of the two opposing forces, by which one is protected against oppression by the other.

We cannot suppose that the levy in this statute of one $5/100$ dollars on the poll and 35 cents on property was intended to be otherwise than additional to the tax which had already been levied in Alexander County up to the limit of $2, because the statute expressly says it shall be. There is no way, therefore, of reconciling this levy with the constitutional mandate as to the amount of the entire poll tax, and no escape from the conclusion that if it is void the statute falls with it. We cannot argue that it shall stop at $2 when the statute expressly provides to the contrary.

It will be seen, therefore, that I agree with the *Chief Justice*, that in no event can the poll tax exceed $2 for any or for all purposes; but I concur with the majority that if this be so, the statute is nugatory (as to this tax), as there was one entire and indivisible scheme of taxation contemplated by the Legislature, which is composed of poll tax and property taxes at the rates designated in the statute, and which must stand or fall as a whole.

I may properly add that the quotation from my opinion in *Collie v. Comrs.*, 145 N. C., 183, made in the opinion of the Court, had refer-

ence to the particular question then before us, as to the school tax under Article IX of the Constitution, and when read with the context will be found to harmonize, in every respect, with the views herein stated. I said then that the poll tax could not exceed $2, except, perhaps, under Article IX, and my reasons for so holding were fully given and need not be repeated here.

It has not been denied that there are some ill-considered dicta, favoring the view of the majority, which may be picked up here and there, like flotsam and jetsam, from the current of judicial opinion; but they were jettisoned long ago, and in 1908 this Court through *Justice Connor*, reviewed, as he said, "every case from which any light may be found upon this difficult question" (148 N. C., 239), and most exhaustively (naming all of those cited by the majority), and deliberately concluded, first, that the poll tax can never exceed $2 for any purpose, ordinary, general, or special, and, second, that the proceeds of the poll tax must be applied to the purposes mentioned in the Constitution and to no other, in the latter respect repudiating what was said in *Board of Education v. Board of Commissioners*, 137 N. C., 310, decided in 1904, and upon which the majority rely and from which they quote. "We are not inadvertent to the fact that our conclusion, in this last respect, is not in harmony with what was said in *Board of Education v. Board of Commissioners*, 137 N. C., 310," is the exact language of the Court. by *Justice Connor*, in the *Mecklenburg case* (148 N. C., at p. 245), and the "last respect" to which he referred was "that Constitution, Article I, sec. 2, applies the poll tax to the purpose of education and the support of the poor, and this language withdraws it for any other purpose." The distinct question in the *Mecklenburg case* (148 N. C., 220) was whether a poll tax above $2 could be levied, the railroad company insisting that it should be, so as to prevent unjust discrimination against it, and the Court held that the poll tax, for any and all purposes, was absolutely restricted to $2. So that the question was *there* undoubtedly presented and decided, if such a thing was possible. And in the *Buncombe case* the issue was, if anything, more clear-cut and pronounced, and the decision more emphatic. The point, and the single point, was whether the Superior Court held correctly that the poll tax could exceed $2 in any case. *Justice Connor* thus stated the one and only question to be: "Whether the words, 'that the State and county capitation tax shall never exceed $2 on the head,' prohibit a poll tax in excess of that sum for any purpose," and the answer was that they do, and that was the *ratio decidendi*. The great value of the discussion in the *Perry case* is that the Court told us, in the most explicit and unmistakable language, what the *Mecklenburg*

and *Buncombe cases* had decided, as to the limit of the tax, both in respect to ordinary and special purposes.

The three cases in 148 N. C., therefore, are the latest authoritative decisions and precedents upon the distinct subject of this appeal, and for that reason I follow and feel bound by them. I dissented in *Hargraves v. Comrs.*, as the record shows, but by inadvertence my dissent was not entered in the official volume (168 N. C., 628) of the reports. This question was not discussed or decided in that case. The decision there was based upon a question entirely foreign to this discussion.

It remains only for me to say that the meaning of a Constitution— statutes and other instruments as well—is fixed at the time they are written, and is not changed by subsequent events. Construction, therefore, should be confined to the written word, and it is utterly immaterial how individual judges may *apparently* have assented to dicta, the question finally being whether we should follow as binding precedents the well considered and final judgments of this Court, which were rendered in 1908, upon this very question, or reject them. It is obvious that what is said in *Perry v. Comrs.* about taxation by subdivisions of a county, such as school districts, can have no bearing upon the limitation of the State and county capitation tax, as it does not apply to that form of taxation, and, therefore, there can be no possible conflict between *Perry's case* and the *Mecklenburg case*.

We are concerned not with results or consequences, but only with what the law is. Expediency has nothing to do with the question. Suspension of business and ultimate bankruptcy are not ordinarily products of frugality. "Live within your means" is the safest rule in public as well as in private affairs, and was commended to us by this Court in *French v. Comrs.*, 74 N. C., 692, when discussing this same question of taxation, as one of great practical wisdom.

I deem it of the utmost importance that we should adhere to what has already been deliberately and solemnly adjudged, *stare decisis* being not only a wise but a wholesome maxim of the law, to which strict observance is due, and changes in construction should not be made except for the most cogent reasons. The power of expounding the laws—which includes the great and responsible duty of deciding whether legislatures, State and municipal, have transcended in their past action the limits of their authority as defined by the Constitution —belongs to the judiciary. Sedgwick St. and Const. Law, p. 253. If it turns out that any change in the law is necessary for the public welfare, and to meet new conditions which require an extension of the legislative power, let it be done by the people in the regular exercise of their sovereign will, and not otherwise. Until it is thus done, I

must read the Constitution as, in my opinion, it is plainly expressed, and endeavor to enforce its provisions accordingly, for such is my duty. In performing this duty, though, I will always regard and consider with respect and deference the opinions of my learned brethren.

It may be that my brethren of the majority are right, and that I am wrong; but however this may be, their decision shall hereafter be the law with me, as I have a strong conviction that a question of construction touching the organic law of the State should be settled once for all, and not be subjected constantly to the varying opinions or the personal notions of the judges. It should be made to rest upon a permanent and unchangeable basis. As said by one of my predecessors, in a similar case, "my only object in expressing my views at all has been to call attention to the subject, so that, if deemed necessary, steps may be taken to make the law perfectly free from doubt, one way or the other," and thus entrench and secure it firmly against the alternation of opinion.

PER CURIAM. Since the opinions in this case were handed down our attention has been called to the objection made to the form of the bonds. The objection is made that the form of the bonds is not in accordance with the statute. The defendants contend that the bonds are proper in form and payable as required by the statute.

We are of opinion that the form of the bonds is correct and that they are issued and payable substantially as required by law.

The judgment of the Superior Court in that respect is

Affirmed.